UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JEREMIAH THOMAS                     CIVIL ACTION NO. 17-cv-1474

VERSUS                              JUDGE TERRY A DOUGHTY

HARTFORD ACCIDENT & INDEMNITY CO.   MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Jeremiah Thomas ("Plaintiff") was injured in a car accident.  It appears that Plaintiff settled his claims against the other driver and her liability insurer.  He then turned to his own uninsured/underinsured ("UM") policy, issued by Hartford Accident & Indemnity Company, to seek additional damages.  Plaintiff and Hartford were unable to settle the claim, and Plaintiff filed suit against Hartford in state court.  Hartford removed the case based on diversity jurisdiction.  Before the court is Plaintiff's Motion to Remand (Doc. 14) on the grounds that the amount in controversy does not exceed $75,000.  For the reasons that follow, it is recommended that the motion be granted.

**Removing Party's Burden**

Plaintiff's petition, consistent with Louisiana law, sought an award of reasonable damages and did not pray for any particular amount.  A notice of removal may assert the amount in controversy if the plaintiff's initial pleading seeks a money judgment but state practice does not permit demand for a specific sum. 28 U.S.C. § 1446(c)(2)(A)(ii). Removal of such an action is proper on the basis of an amount in controversy asserted in

the notice of removal "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000 exclusive of interest and costs.  28 U.S.C. §§ 1446(c)(2)(B) and 1332(a).  The burden is on the removing party to show that removal is proper, and any doubts should be resolved against federal jurisdiction.  Vantage Drilling Co. v. Hsin-Chi Su, 741 F.3rd 535, 537 (5th Cir. 2014).

Defendant asserted in its notice of removal that the amount in controversy exceeds $75,000.  Defendant may satisfy its burden on that issue by: (1) demonstrating that it is "facially apparent" that the claims are likely above $75,000, or (2) setting forth the facts in controversy — in the notice of removal or an affidavit—that support a finding of the requisite amount.  Luckett v. Delta Airlines, 171 F.3d 295, 298.  Accordingly, the court will review the petition and relevant facts submitted by the parties.

**Relevant Allegations and Facts**

Plaintiff alleges in his petition that he was driving a 2012 Chevy headed south on the Clyde Fant Parkway in Shreveport, near the intersection with the Shreveport-Barksdale Highway, when another driver failed to stop or yield at the intersection "before violently striking the passenger's side" of his vehicle.  The other driver was insured by Safeco, and Plaintiff had UM coverage through his Hartford policy.  Neither the petition nor other materials explain, but it is implied that Plaintiff settled his demands against the other driver and Safeco.  The only named defendant in his petition is Hartford.

The Hartford UM policy has a policy limit of $50,000 for bodily injury to one person.  Doc. 19-3.  Plaintiff's counsel wrote a letter to a Hartford claims representative in March 2017 and stated that the case (presumably the underlying claim against the other

driver and her insurer) was nearing trial in state court and counsel was "attempting to settle this matter at this time so as to avoid the possibility of a bad faith claim against your client … ."

Counsel wrote that Plaintiff had been employed at the time of the accident as an owner/operator at a fence company and had past lost wages of approximately $15,000.  The 80-year-old Plaintiff had required extensive physical therapy that had proved unsuccessful in providing permanent relief.  Counsel outlined Plaintiff's medical care, which included treatment for injuries to neck, shoulders, back, knees, and head.  An MRI indicated multiple disc injuries, and a pain management specialist was of the opinion that Plaintiff needed surgery, but he was going to try steroid injections first. Counsel stated that Plaintiff had been treated by a number of physicians, he was still symptomatic one year after the accident, and he would continue to need care for the rest of his life.  Medical records were said to show bills totaling approximately $12,000.

Counsel concluded by noting that Hartford had failed, despite notice of the UM claim, to make a reasonable tender or pay the medical bills in a timely fashion "and accordingly we feel that we have a significant bad faith claim in the event that this matter goes to judgment."  He suggested that a settlement of "$100,000, inclusive of both his UM claim and the bad faith claim" was reasonable.

Counsel wrote Hartford again in May 2017 and said that Plaintiff was willing to settle the claim for "policy limits" but had only received $10,259 from the UM carrier thus far.  He said he would proceed to file suit, which "does make settling that claim within policy limits, a little bit more difficult."  Counsel wrote again on July 6, 2017 and said he

was authorized to accept "the sum of $75,000 as full and final settlement" in the matter. He sent a virtually identical $75,000 offer on July 20, 2017, but with the heading "FINAL DEMAND." Plaintiff filed suit in state court in September 2017.

Plaintiff's petition against Hartford did not seek a specific amount of damages. It did allege that Plaintiff was entitled to recover damages in several categories, such as pain and suffering, mental anguish, loss of wages, loss of earning capacity, and future medical expenses. The prayer asked for judgment in the amount allowable under law "including bad faith damages," and it requested an award of "punitive damages as allowed under the statute." Hartford promptly removed the civil action.

Plaintiff filed his motion to remand and attached to it an Affidavit signed by Plaintiff and an Irrevocable Stipulation to Damages signed by counsel. Plaintiff stated in the affidavit that he agrees and stipulates that the total damages he seeks, inclusive of attorney fees and penalties, is no greater than $75,000. He stipulated and affirmed that he will neither accept nor enforce any judgment to the extent it results in him being awarded an amount in excess of $75,000, exclusive of interest and costs, and he waives any such excess amount. The stipulation document signed by counsel included similar representations, as well as a promise to not amend the petition to plead an amount in excess of $75,000 after the one-year limit on removal of diversity cases has passed. See 28 U.S.C. § 1446(c).

## Analysis

### A. Effect of Policy Limit

It does not appear that either party mentioned in their filings the key fact regarding the amount in controversy—the $50,000 limit of the UM policy—until Plaintiff's reply

memorandum. That fact is important because when a plaintiff seeks to recover under an insurance policy, the policy limits cap the potential amount in controversy (subject to additional amounts for statutory penalties or attorney fees). Hartford Ins. Group v. Lou-Con, Inc., 293 F.3d 908, 911 (5th Cir. 2002), citing Payne v. State Farm, 266 F.2d 63, 65 (5th Cir. 1959). And in a UM case, the court considers only the amount of coverage available under the UM policy and not any amounts that might have been paid by the principal liability insurer. Wheeler v. Farmers Ins. Exchange, 2013 WL 4432097 *2-3 (W.D. La. 2013) (Hornsby, M.J.), aff'd, 2014 WL 280356 (W.D. La. 2014) (Foote, J.); Henderson v. Allstate Fire & Cas. Ins. Co., 154 F. Supp. 3d 428, 432 (E.D. La. 2015) (Vance, J.).[1]

Plaintiff's pre-suit settlement demand for $100,000 mentioned $27,000 in past lost wages and medical expenses, alleged ongoing medical care for serious injuries that might require surgery, and continuing pain and symptoms. The amount of a pre-suit settlement demand does not define the amount in controversy, but district courts throughout Louisiana have acknowledged that such pre-suit offers or demands are "valuable evidence" in determining the amount in controversy. Lowrie v. Wal-Mart, 2015 WL 9685508, *2 (W.D. La. 2015) (collecting cases).

The injuries and damages described in the settlement letter, plus the $100,000 demand, as well as later demands for $75,000, established that the amount in controversy

---

[1] There is, however, a difference of opinion on the issue. One decision has held that the amount in controversy in a claim against a UM policy also takes into account the limits of the underlying liability policy. Briley v. State Farm, 2012 WL 219431 (W.D. La. 2012), (Kay, M.J.).

could include the full amount of the $50,000 UM policy.  But only $40,000 is at stake under the policy because Plaintiff represents that "Hartford has paid approximately $10,000 to plaintiff in connection with his claims" that "leaves a net amount available under the policy of approximately $40,000.00." Doc. 19, pp. 3-4.  When a plaintiff seeks to recover payments under an insurance policy, the amount in controversy "is governed by the lesser of the value of the claim under the policy or the value of the policy limit." Henderson v. Allstate Fire and Casualty Insurance Company, 154 F. Supp. 3d 428, 431-32 (E.D. La. 2015).[2] See also Mercier v. Allstate Insurance Company, 2007 WL 210786, *2 (E.D. La. 2007).  Thus, the basic amount in controversy is $40,000.

### B.  Statutory Penalty

Statutory penalties may also be considered in assessing the amount in controversy. St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998); Wright Family Investments, LLC v. Jordan Carriers, Inc., 2012 WL 2457664, *4 (W.D. La. 2012). Defendant argues that the amount in controversy includes the statutory penalties that Plaintiff mentioned in his settlement demand and prayed for in his petition.

Plaintiff's petition does not cite a particular statute to support his bad-faith claim.  It merely prays for "punitive damages as allowed under the statute." There is no legal basis

---

[2]  Henderson involved a similar situation. The court explained:  "Here, plaintiff's insurance policy limits Allstate's maximum liability to $50,000. Allstate has already paid plaintiff $7,500, so the maximum amount that plaintiff can recover from Allstate under the policy is $42,500. Because this lawsuit could not result in lawful a judgment against Allstate for more than $42,500 (before statutory penalties and attorney's fees), that figure represents the maximum contribution that plaintiff's claim can make towards the amount in controversy requirement."

to award punitive damages in a case of this kind, but it is possible to recover a statutory penalty from an insurer for breach of its duty of good faith.  Defendants cite La. R.S. 22:1973 (formerly numbered 22:1220) as the potential grounds for a penalty.

Section 1973 states that it is a breach of an insurer's duty if it fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause."  The statute then states: "In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

The available penalties under a statute of this kind are based solely on the consequential damages sustained as a result of a breach of duties under the statute; the penalties are not calculated by doubling the amounts due under the insurance policy.  Durio v. Horace Mann Ins. Co., 74 So.3d 1159, 1168 (La. 2011) (interpreting Section 1220 before it was renumbered Section 1973).  Neither the facts set forth in the petition nor those provided by Defendant suggest a factual basis for determining a penalty greater than the $5,000 minimum under the statute, so that is the highest value the court can attribute to the claim for penalties when assessing the amount on controversy.  Wheeler, 2013 WL 4432097 at *3-4, citing Washington v. Liberty Mutual Fire Ins. Co., 2012 WL 3096046, *3 (W.D. La. 2012) (reaching same conclusion in a case with penalty claim under Section 1973); and Gelvin v. State Farm Mut. Auto Ins. Co., 2012 WL 1354855 (E.D. La. 2012) (same).  That gets Defendant to $45,000.

Defendant does not cite any other grounds for recovery of a penalty, but the court notes that UM claimants may be able to recover a larger penalty under La. R.S. 22:1892. That statute imposes a duty on an insurer to pay a claim within 30 days after receipt of receipt of satisfactory proof of loss from the insured.  If the failure to pay is arbitrary, capricious, or without probable cause, it subjects the insurer to "a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, … or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due …"

The insured cannot recover under both penalty statutes. He gets only the more favorable penalty.  Calogero v. Safeway Ins. Co. of Louisiana, 753 So.2d 170 (La. 2000); McKenzie and Johnson, 15 La. Civ. L. Treatise, Insurance Law & Practice § 11:14 (4th Ed.).  Plaintiff could potentially recover a $20,000 penalty under § 1892, which is more favorable based on the showing thus far in this case.   Neither Plaintiff nor Defendant have invoked the statute, but it could get Defendant to $60,000.

### C. Attorney Fees

Section 1892 also allows for an award of "reasonable attorney fees and costs," and a statutory attorney fee counts in assessing the amount in controversy.  St. Paul Reinsurance Co., Ltd., 134 F.3d at 1253.[3]  But fees don't count in this case because (1) Plaintiff's

---

[3] A claimant who elects the penalty provision of Section 1973 may also recover attorney fees under Section 1982.  McKenzie and Johnson, 15 La. Civ. L. Treatise, Insurance Law & Practice § 11:14 (4th Ed.).

settlement letter did not make a demand for attorney fees, (2) Plaintiff's state court petition did not include a mention of or pray for attorney fees, and (3) Defendant has not argued that attorney fees should be counted in assessing the amount in controversy. The undersigned will nonetheless briefly address the issue in the event it is raised belatedly in objections to this recommendation.

Louisiana law treats fees and penalties as items of special damages under La. C.C.P. art. 861 that must be specifically alleged to be recovered. See Amos v. Taylor, __ So.3d __, 2017 WL 4273695 (La. App. 2d Cir. 2017) ("Attorney fees are special damages that must be alleged in the petition."); Dennis v. Allstate Ins. Co., 645 So. 2d 763, 766 (La. App. 5 Cir. 1994) (reversing award of fees and penalty under former designation of § 1892 because not specifically prayed for); and Hardy v. Cumis Ins. Co., 558 So.2d 625, 628 (La. App. 1st Cir. 1990) (same). Plaintiff did not pray for fees under any statute. There is not, therefore, a sound basis for considering fees as part of the amount in controversy in this case.

Even if fees had been prayed for, only a reasonable estimate of a fee award could be considered. Wright Family Investments, LLC v. Jordan Carriers, Inc., 2012 WL 2457664, *4 (W.D. La. 2012). If Plaintiff hit a home run on damages and earned a verdict of $40,000, plus a $20,000 penalty, the court would have to award more than $15,000 in attorney fees to bring the amount over $75,000. That would be more than a 25% fee on the amount recovered. A fee award of more than $15,000 is possible, but it could be less considering the relative lack of complexity of the case, the amount at stake, and the likely lack of a serious contest over liability. The mere possibility of such an award is not enough.

The burden is on Defendant to establish that it is more likely than not that the total amount in controversy exceeds $75,000, and any doubt about the propriety of removal must be resolved in favor of remand. Gasch v. Hartford Acc. & Indem. Co., 491 F.3rd 278 (5th Cir. 2007). There is room for doubt that Plaintiff, even if successful in gaining a verdict for the full policy limits and a $20,000 penalty, could also garner a fee award from the court of more than 25% of the total award. That doubt means Defendant has not satisfied its burden even if attorney fees are considered. But, again, fees are not available here because Plaintiff did not pray for them.

### D. Post-Removal Stipulation

The parties have focused on the effect of Plaintiff's post-removal stipulation and waiver, but the court need not reach that issue to resolve the motion to remand. The court will note, however, that if Defendant had satisfied its burden on the amount in controversy, Plaintiff's stipulation would probably not warrant remand. A plaintiff may defeat removal by filing a pre-removal stipulation with his state court petition that affirmatively renounces the right to accept a judgment in excess of $75,000. Police Jury Bossier Parish v. Bluford, 2015 WL 9312017 *3 (W.D. La. 2015). But a post-removal affidavit or stipulation does not strip the court of jurisdiction, and it may be considered only to help clarify the amount in controversy when it is ambiguous at the time of removal. Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000). Plaintiff waited until after the case was removed to offer his stipulation, so its effect would be limited.

**Conclusion**

A showing that damages "could well exceed" the jurisdictional amount or that there is a "possibility" that the plaintiff could recover more than the jurisdictional amount is insufficient to carry the removing defendant's burden. Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1336 (5th Cir. 1995). Rather, the removing defendant must establish by a preponderance of the evidence, meaning it is more likely than not, that the jurisdictional amount is satisfied. Id.; 28 U.S.C. § 1446(c)(2)(B).

Considering the maximum amount of the claim against the policy and the limited statutory penalty that is available, Defendant has not demonstrated that the amount in controversy exceeds $60,000. Attorney fees are theoretically available, but legally unavailable because Plaintiff has not prayed for them. Even if they were prayed for, the fee award would have to be fairly significant to bring the total amount above $75,000. Defendant has not met its burden of showing that it is more likely than not that the amount in controversy exceeds $75,000, so the court lacks subject-matter jurisdiction. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447.

Accordingly,

It is recommended that Plaintiff's **Motion to Remand (Doc. 14)** be **granted** and that this civil action be **remanded** to the First Judicial District Court, Caddo Parish, where it was pending as Suit No. 603608.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of March, 2018.

Mark L. Hornsby
U.S. Magistrate Judge